SCOTT *v.* CAIN.

1. That the agent of one claiming to own a lot of wild land as purchaser at sheriff's sale was personally on it very often, visiting it to protect the possession and warn off intruders, such purchase and agency being generally known in the neighborhood, that there was no trespassing on the lot and no other person exercised any ownership over it, and that the agent returned the land and paid taxes on it for the alleged owner, but did not live on it or build any house, fence or other structure on it, is not evidence of such possession as the law requires to be the foundation of a title by prescription.
2. The court did not err in any of its rulings as to the rejection of testimony, and the nonsuit was properly granted.

August 27, 1892.          *Judgment affirmed.*

Title. Possession. Wild land. Evidence. Before Judge ROBERTS. Wilcox superior court. September term, 1891.

Complaint for land lot 130 in the 1st district of originally Irwin, now Wilcox county, was brought by E. M. Scott against A. B. Cain. A nonsuit was granted, and the plaintiff excepted. The evidence was:

Sheriff's deed to the plaintiff, dated July 3, 1883, covering lots 129, 130 and 136 in the 1st district of originally Irwin, now Wilcox county, consideration $800; and the *fi. fa.* under which sheriff's sale was made, from Pike superior court, April term, 1874, in favor of Sherwood, Karnes & Co. *v.* B. W. Scott, transferred to

E. M. Scott; the property having been sold as that of B. W. Scott. Sheriff's deed (admitted as color only) to B. W. Scott, dated May 7, 1878, covering the lot sued for, reciting a transfer of the execution on which it was based, by the comptroller-general to B. W. Scott. Wild land tax execution issued by Goldsmith, comptroller-general, October 1, 1877, against the lot sued for, for unpaid taxes for 1874, '5 and '6; indorsed with a transfer for value received, to B. W. Scott, dated March 7, 1878. This execution was tendered first without the indorsement, and was rejected. It was then tendered with the indorsement, and was again ruled out. These rulings are each assigned as error.

Testimony of Smithhart: Have known lot 130 eighteen years; it was never occupied till sold by the sheriff in May, 1878, to B. W. Scott, who took formal possession and gave me charge as agent. I kept possession and control of it till 1886, returning and paying tax on it for B. W. Scott, and afterwards for E. M. Scott. I removed to Florida in 1887, notifying Scott to get another agent. There was no trespassing on the lot before the summer of 1886. I did not live on the lot, nor build any house, fence or other erection on it. I was personally on it very often, to protect possession, keep off intruders, etc. Scott's purchase and my agency and custody were generally known in the neighborhood; no other person exercised any ownership over the land at that time. Returning in 1889, I found that about all the timber on the lot had been boxed for turpentine. This lot was one of those contiguous lots (129, 130, 136) bought by Scott at same sale, all of which were equally under my supervision for Scott. The question, what building or other erection did Scott maintain on either of the contiguous lots named? was ruled out by the court, which ruling is assigned as error.

B W. Scott testified: In 1878 Smithhart showed me over the land in issue. I bought it at sheriff's sale,

took deed, entered at once, and put Smithhart in possession as my agent to occupy, pay tax and keep intruders off; his agency and possession continued without disturbance until 1886, when he notified me of intrusion and of his intended removal to Florida. His agency was generally known in the neighborhood, especially to the defendant, Cain, who tried to buy it from me, and afterwards from E. M. Scott, plaintiff, who continued Smithhart as agent as he had been for me. Defendant was present at the sheriff's sale in 1883, and bid for the land. No adverse claim was made, nor any objection to the sale. The taxes have been paid on this land by myself or plaintiff, directly or through Smithhart, from 1878 to 1891. There were three lots in the body overlooked by Smithhart. I had a house on one of them, but not on 130. The plaintiff is my wife, and was present at the sale, though I acted for her.

The sheriff testified that no objection was made to the sale nor any claim mentioned on either occasion. The plaintiff introduced the tax receipts from 1879 to 1890; also testimony as to the value of the land for rent, etc.

C. P. CRAWFORD and HINTON & CUTTS, for plaintiff.
A. C. PATE, for defendant.